364 So.2d 768 (1978)
TERINO BROS., INC., Appellant,
v.
Arthur H. AIREY, Appellee.
No. 77-1803.
District Court of Appeal of Florida, Second District.
October 13, 1978.
Rehearing Denied November 27, 1978.
Charles E. Bergmann of Yado, Keel, Nelson, Grandoff, Casper, Bergmann & Newcomer, P.A., Tampa, for appellant.
Robert K. Eddy of Nixon & Farnell, Tampa, for appellee.
OTT, Judge.
We affirm the action of the lower court in setting aside the default judgment entered against the appellee.
Appellant (plaintiff below) bought a trenchtrailer from appellee (defendant below). About a year and a half later, appellant agreed to purchase a second trenchtrailer upon the express condition that appellee would repair the first trenchtrailer which had become inoperable due to mechanical problems. A written agreement was entered into to this effect. Appellant agreed to furnish the necessary repair parts.
Appellant filed a complaint for damages alleging that the appellee  although promising to make the repairs  had failed to make them and was systematically stripping the first trenchtrailer in order to make repairs on other machines.
The summons and complaint were served on the appellee on March 24, 1977. Appellee did not have an attorney at this stage. He sent a letter to appellant's attorney but did not file a copy with the clerk. The letter was dated April 8, 1977 and was received by appellant's attorney on or about April 10, 1977. The opening paragraph of the letter stated as follows:
In reply to papers received from you on March 24th, 1977 regarding Terino Bros.; [sic] Inc. and Arthur Airey I would like to offer the following information.
In the remainder of this letter the appellee asserted that appellant failed to comply with his contract obligation to provide the *769 required repair parts thereby effectively preventing the appellee from performing his contract obligation to repair the trenchtrailer.[1]
Appellant obtained a default from the clerk on April 25, 1977. A final judgment was entered on August 25, 1977. The appellee was given no notice with respect to the motion for default or the application for final judgment.
On or about September 8, 1977, appellant's attorney mailed a copy of the final judgment directly to the appellee. Appellee promptly secured an attorney, and on September 22, 1977, a motion for relief from judgment was filed. Following a hearing the lower court entered an order setting aside the default and final judgment. The order stated in pertinent part:
[a]lthough there had been no formal defensive pleadings filed, the Defendant had within the time required by law written Plaintiff a letter advising of the fact that there was a dispute as to whether the Plaintiff had provided some portions of the equipment that was the subject of the contract resulting in a bona fided [sic] issue as to whether the Plaintiff had fulfilled its contract... .
The several rules in the Rules of Civil Procedure bearing on this case are as follows:
Rule 1.080. Service of Pleadings and Papers
(a) Service; When Required. Unless the court otherwise orders, every pleading subsequent to the initial pleading and every other paper filed in the action, except applications for witness subpoena, shall be served on each party. No service need be made on parties against whom a default has been entered, except that pleadings asserting new or additional claims against them shall be served in the manner provided for service of summons.
(b) Same; How Made. When service is required or permitted to be made upon a party represented by an attorney, service shall be made upon the attorney unless service upon the party is ordered by the court. Service on the attorney or party shall be made by delivering a copy to him or by mailing it to him at his last known address or, if no address is known, by leaving it with the clerk of the court. Delivery of a copy within this rule shall mean (1) handing it to the attorney or to the party or (2) leaving it at his office with his clerk or other person in charge thereof or (3) if there is no one in charge, leaving it in a conspicuous place therein or (4) if the office is closed or the person to be served has no office, leaving it at his usual place of abode with some person of his family above fifteen years of age *770 and informing such person of the contents. Service by mail shall be complete upon mailing.
(c) Same; Numerous Defendants. In actions when the parties are unusually numerous, the court may regulate the service contemplated by these rules on motion or on its initiative in such manner as may be found to be just and reasonable.
(d) Filing. All original papers shall be filed with the court either before service or immediately thereafter. If the original of any bond or other paper is not placed in the court file, a certified copy shall be so placed by the clerk.
(e) Filing With the Court Defined. The filing of papers with the court as required by these rules shall be made by filing them with the clerk, except that the judge may permit the papers to be filed with him in which event he shall note thereon the filing date and transmit them to the clerk.
Rule 1.140. Defenses
(a) When Presented. A defendant shall serve his answer within 20 days after service of original process and the initial pleading on him... .
Rule 1.500. Defaults and Final Judgments Thereon
(a) By the Clerk. When a party against whom affirmative relief is sought has failed to file or serve any paper in the action, the party seeking relief may have the clerk enter a default against the party failing to serve or file such paper.
(b) By the Court. When a party against whom affirmative relief is sought has failed to plead or otherwise defend as provided by these rules or any applicable statute or any order of court, the court may enter a default against such party; provided that if such party has filed or served any paper in the action, he shall be served with notice of the application for default.

.....
(d) Setting Aside Default. The court may set aside a default and if a final judgment consequent thereon has been entered, the court may set it aside in accordance with Rule 1.540(b). (emphasis added).
In essence, the court concluded that appellee's pro per letter to appellant was equivalent to an answer. If this were an answer, it was served within the time specified by Rule 1.140(a). The failure to comply with the filing requirement of Rule 1.080(d) would not be determinative because under Rule 1.500(a) the clerk is not entitled to enter a default when an answer has either been filed or served. Because appellant's motion for default recited that there had been no filing or service of any paper required by law, the clerk understandably entered a default. Yet, when the court held that the letter constituted an answer, this necessarily vitiated the default. See Pan American World Airways v. Gregory, 96 So.2d 669 (Fla. 3d DCA 1957). Appellant's attorney may not have believed the letter to be an answer because of its form and the absence of proper filing, but the safer practice would have been to have applied for a default from the court under Rule 1.500(b), which would have dictated giving notice to appellee.
Under the circumstances of this case, we find no gross abuse of discretion in the action of the trial court in construing the letter as an answer and setting aside the default judgment. See North Shore Hospital, Inc. v. Barber, 143 So.2d 849 (Fla. 1962); Sterling Drug, Inc. v. Wright, 342 So.2d 503 (Fla. 1977); Garcia Ins. Agency, Inc. v. Diaz, 351 So.2d 1137 (Fla. 2d DCA 1977).
The following governing sentiment surrounding default judgments has not changed over the years:
[I]f there be any reasonable doubt in the matter, it should be resolved in favor of granting the application and allowing a trial upon the merits of the case.
*771 State Bank of Eau Gallie v. Raymond, 103 Fla. 649, 656, 138 So. 40, 43 (1931).
AFFIRMED.
GRIMES, C.J., and BOARDMAN, J., concur.
NOTES
[1] The full text of the letter was as follows:

In reply to papers received from you on March 24, 1977 regarding Terino Bros., Inc. and Arthur Airey I would like to offer the following information.
I do not feel that Mr. Terino's accusations are correct because to begin with there was no battery on the machine in order that it might be taken from its trailer for repair. Mr. Terino furnished me with a broken slide assembly; sprockets for which there was no keyways or keys so that upper and lower shaft assemblies could be assembled and said trailer could not be repaired because machine could not be removed from trailer in order to tilt trailer which is necessary for repair.
All parts to Mr. Terino's machine are accountable for. The parts that have been removed were done so for safekeeping. These parts were needed to be removed so that they could be assembled with the parts Mr. Terino was to have supplied. Being that the keys and keyways were not supplied this was not possible. The wheel was removed from the trailer for Mr. Terino's protection so that same would be protected from theft.
I furnished Mr. Terino with the necessary numbers in order that he might obtain the proper parts. Where Mr. Terino purchased these parts he was furnished the wrong parts and he evidently neglected to check the parts he purchased against the proper numbers furnished to him. Mr. Terino corrected this but only after much time had elapsed.
I went to Mr. Terino's place of business to discuss this situation with him. Mr. Terino became enraged, shaking his fist in my face and using unprintable language so I left.
We have had the plates put on the chain for months. However, we cannot assemble it without the proper parts as mentioned above.
I would be happy to meet with you and Mr. Terino to discuss this matter at a time convenient to all.