ERVIN, J.,
concurring and dissenting.
I concur with the majority in affirming all issues raised except that affirming the finding that claimant was represented by counsel at the time the release was executed, which resulted in the conclusion by the judge of compensation claims (JCC) that the validity of the release was controlled by the provisions of section 440.20(ll)(c), Florida Statutes (2003), relating to releases secured through the assistance of counsel, rather than those provided in section 440.20(ll)(b), pertaining to unrepresented claimants, which, unlike subsection (ll)(c) states, among other things, that a JCC shall determine whether the agreement “is clearly for the best interests of the person entitled to compensation.” In contrast, the only judicial approval needed for a settlement agreement signed by a claimant represented by counsel under section 440.20(ll)(c) is as to the amount of attorney’s fees to be paid by claimant to his or her counsel. In my judgment, the JCC erred as a matter of law in interpreting section 440.20(ll)(c) to mean that a claimant must be considered represented in a situation where his earlier retained lawyer was not later involved in either the negotiation or execution of the agreement.
In so concluding, I find nothing in Pateo Transport, Inc. v. Estupinan, 917 So.2d *1104 922 (Fla. 1st DCA 2005), review denied, 932 So.2d 192 (Fla.2006), addressing the issue of whether the provisions of section 440.20(ll)(c) are applicable to a situation as here where an attorney had previously made an appearance on behalf of an employee by filing petitions for workers’ compensation benefits, but otherwise played no role in securing compensation for his client through a settlement agreement. The reason that no such issue was raised in Pateo is first, it appears from a reading of the opinion that no claim for workers’ compensation was pending at the time the parties executed the release, and second, the employee was actively represented by counsel at the time the agreement was signed. As Pateo plainly states, the only issue before the court was whether the terms of a general release clearly and unambiguously barred a claim for workers’ compensation benefits. If this were the only issue raised in the present ease, I would have no hesitation in agreeing to affirm because the language of the release on review is substantially similar to that in Pateo; however, no question was asked in Pateo whether claimant could be considered represented by an attorney, thereby requiring the application of section 440.20(ll)(c).
In order to explain my position sufficiently, I consider it necessary to recite certain facts in addition to those set out in the majority’s opinion. Following his industrial accident of September 24, 2004, claimant, through his attorney, filed the first of two petitions for benefits on April 22, 2005,[1] seeking authorization of three medical procedures recommended by his treating physician. Despite the knowledge of the employer that claimant was represented by workers’ compensation counsel, both executed the agreement on May 19, 2005, without, however, the signature of claimant’s attorney, and it recited that in exchange for the employer’s payment of certain sums over a period of several weeks, claimant would release the employer from “any and all claims.”
Because the JCC considered the language of the release clearly expressed the parties’ agreements, she refused to allow the admission of parol evidence explaining the contract’s terms. She did, however, permit claimant to proffer testimony of what he considered the agreement meant. Claimant testified that approximately two months before the release’s execution he was approached by employer’s regional manager, who offered him $8,000 in exchange for his release of the employer from liability. Claimant rejected the offer, but later submitted a counteroffer, agreeing by letter that in return for the employer’s payment of $15,000 to him, “all matters between the company and myself [would be closed,] save the ongoing work-mans’ comp situation.”[2]
As earlier stated, I am in complete accord with the majority in deciding that the JCC correctly ruled the terms of the agreement were clearly stated, with the result that all additional claims for compensation were barred. The JCC’s decision in this regard does not, however, foreclose the question of whether the claimant could be said to be represented by counsel at the time of the agreement’s execution. If it were determined that he was not represented, despite the lack of ambiguity in the agreement, the JCC is still required to decide whether its provisions “will definitely aid the rehabilitation of the injured *1105 worker or otherwise [are] clearly for the best interests of the person entitled to compensation.” § 440.20(ll)(b).
In the present case, not only was the agreement unsigned by claimant’s counsel, but the JCC also found that claimant had not consulted with his previously retained workers’ compensation counsel before signing the release. Despite so finding, she further ruled that because claimant’s attorney had filed a petition for benefits on behalf of his client before the date of the agreement, “claimant was represented by workers’ compensation counsel at the time he signed this agreement,” and, because of such representation, she was only required by section 440.20(ll)(c) to approve any attorney’s fee which claimant might owe to his lawyer. The JCC thereupon concluded, in that the terms of the agreement were unambiguous, and she was not required by subsection (ll)(c) to review the reasonableness of its terms, claimant had released all of his claims, thereby requiring that the two petitions for benefits be dismissed. In that the JCC’s decision is grounded on an interpretation of law, we review that decision by the de novo standard.
In reaching such conclusion, the JCC overlooked the legal effect of the absence of counsel’s signature on the stipulation during the time that claimant was purportedly represented by him. Florida Rule of Judicial Administration 2.060(c) requires that every pleading and other paper of a party represented by an attorney be signed by the attorney, including his or her address, telephone number, and Florida Bar number.[3] Subsection (c) continues that “[i]f a pleading is not signed ..., it may be stricken and the action may proceed as though the pleading or other paper had not been served.” Subsection (d) of the rule permits an unrepresented party to “sign any pleading or other paper.” Thus, a party’s signature on a pleading or other paper while represented by an attorney subjects that document to dismissal. See Colby Materials, Inc. v. Caldwell Constr., Inc., 926 So.2d 1181, 1184 (Fla.2006); Torrey v. Leesburg Reg’l Med. Ctr., 769 So.2d 1040 (Fla.2000).
The legislature is of course presumed to be aware of existing law relevant to the legislation at the time it enacts subsequent statutes. See State v. Dunmann, 427 So.2d 166 (Fla.1983); Oldham v. Rooks, 361 So.2d 140 (Fla.1978). In addition to the pertinence of that statutory presumption, the language of section 440.20(ll)(c) itself, when considered in pari materia with that of section 440.20(ll)(b), does not reasonably imply that claimant could be considered represented by counsel at the time of the agreement’s execution, in regard to facts showing the total lack of a lawyer’s participation in a settlement agreement. This conclusion is supported by the legislative history of section 440.20(11).
Before the creation of subsection (c), the JCC had the responsibility of reviewing and approving all proposed lump-sum settlements as to both represented and non-represented claimants for the purpose of ensuring that they had reached the point of maximum medical improvement, that attorney’s fees were within the percent *1106 ages permitted by law, and that the settlement submitted was in their best interests. See § 440.20(ll)(b), Fla. Stat. (2000).[4] Included within the 2001 amendments[5] was the addition of subsection (c), which provides in part: “[W]hen a claimant is represented by counsel, the claimant may waive all rights to any and all benefits under this chapter by entering into a settlement agreement releasing the employer and the carrier from liability for workers’ compensation benefits in exchange for a lump-sum payment to the claimant.” The subsection additionally excuses the parties from submitting any information in support of the agreement, “except as needed to justify the amount of the attorney’s fees.”
The provisions of section 440.20(ll)(c) stand in sharp contrast to those in section 440.20(ll)(b), which continue to provide that an agreement of an unrepresented claimant to a lump-sum amount in exchange for the E/C’s release from liability for future claims after he or she has attained maximum medical improvement is subject to “such investigations as [the JCC] considers necessary” for the purpose of deciding whether the agreement is in the best interests of the person entitled to compensation.
Because of the differences in the language of the two statutes, I am firmly convinced that the legislature, by creating the 2001 amendments, did not intend for the term “represented” to encompass agreements in which a claimant’s attorney of record was not involved. The provision of attorney’s fees for represented employees under subsection (c), and the absence of such provision under subsection (b) as to unrepresented claimants, reasonably implies the legislative intent that attorneys actively participating in the preparation of the agreement should receive a fee for their services in achieving a settlement agreement on behalf of their clients. The absence of language in subsection (c), formerly provided in section 440.20(ll)(b), Florida Statutes (2000), as to both represented and unrepresented claimants, which had required the JCC to review the terms of an agreement for the purpose of deciding whether it was in the employee’s best interests, further reflects the legislative intent that subsection (c) was designed in part to delegate such responsibility to counsel, in consultation with his or her client, rather than to the discretion of a judge.
Because I conclude that a claimant whose attorney was completely uninvolved in the negotiation or execution of a settlement agreement cannot be reasonably characterized as a person represented by counsel under the terms of section 440.20(ll)(c), I am of the opinion that the provisions of section 440.20(ll)(b), pertaining to nonrepresented claimants, are applicable, thereby requiring that the JCC review the agreement for the purpose of determining, among other things, whether it would aid in claimant’s rehabilitation or is clearly in his best interests.[6]

. A second petition was filed on August 9, 2005.

. Although the letter was not submitted as part of the proffer, claimant’s attorney used a copy of the letter to refresh claimant’s recollection by reading its contents into the record.

. Florida Administrative Code Rule 60Q-6.103(l)(d) similarly provides all documents filed with the Office of the Judges of Compensation Claims shall contain the name of the attorney representing the party and his or her Florida Bar number. Moreover, in regard to the procedure applicable to settlement agreements in particular, the provisions of rule 60Q-6.123(l)(a)l. should be taken into proper account, stating that joint petitions for settlement must be accompanied by the settlement petition signed by "all attorneys of record and the employee or claimant.”

. The above provisions are currently retained in section 440.20(1 l)(b), Florida Statutes (2003), only as to unrepresented claimants.

. See ch. 2001-19, § 17, Laws of Fla.

.I note that the JCC's order implicitly found that the agreement was not in claimant’s best interests, because she otherwise observed that if she had determined the release to be ineffective, she would find the accident compen-sable and would award impairment and other benefits.